*818 OPINION OF THE COURT
Mary M. Work, J.
Mr. K. filed a petition on July 27, 1992 seeking a downward modification of the support ordered for his daughter to reflect his reduced salary. In the supplemental statement attached to the petition, Mr. K. stated he had lost his job at IBM and was working for $7 per hour on a part-time probationary basis in a new job. A fact-finding hearing was held October 23, 1992, at which Mr. K. acted as his own attorney. He testified in his own behalf and he subpoenaed Mr. C., his IBM manager, as a witness. Mr. K. and Ms. B. submitted financial affidavits which were admitted into evidence.
Hearing Examiner Brinnier issued a combined findings, decision and order dated October 30, 1992 in which he denied the downward modification, stating that Mr. K. had failed to prove that his reduction in income was not voluntary. This order was entered November 9, 1992 and Mr. K. timely filed objections on December 9, 1992. Ms. B. filed a rebuttal on December 23, 1992. A transcript of the fact finding was prepared and submitted to the court on March 10, 1993. This court has reviewed the objections, the rebuttal, and the transcript on this review.
Preliminarily, Mr. K. takes issue with the Hearing Examiner’s characterization that he appeared pro se "by choice”. The significance of this phrase is that he was not entitled to a court-appointed attorney on the modification petition. In order to appear by counsel, Mr. K. would have had to hire an attorney to appear with him. He did not do so.
His first objection is that the Hearing Examiner decided he voluntarily left his job with IBM. Mr. K. argues that it is common knowledge that IBM is reducing its work force. Faced with declining job performance, Mr. K. took advantage of the ITO — defined by Mr. K. as "individual transition option” but later defined by Mr. C., Mr. K.’s manager at IBM, as "involuntary termination program”. Mr. K. objects that although the word "fired” was not used, he was given to understand that if he did not leave under the ITO, he would be dismissed and perhaps under terms not as favorable as those offered by the ITO. Mr. C. testified that although Mr. K.’s performance had declined, he was not told he would certainly be dismissed unless he took the ITO, only that there was a possibility he could be dismissed without the ITO benefit, because ITO was limited to only those employees who had a satisfactory perfor *819 manee rating at the time they left. Mr. K. submitted his resignation in May and left IBM effective July 31,1992.
The question confronting the Hearing Examiner, under the circumstances as presented in court, was whether Mr. K.’s separation from IBM was voluntary or involuntary. The court will take judicial notice of the recent layoffs at IBM and will also take judicial notice that IBM has been offering its employees various packages as an incentive to leave in order to avoid layoffs. Each of these IBM voluntary-leave cases will have to be handled on an individual basis — whether it was reasonable, given the business climate at IBM at the time the employee left, and given the employee’s individual work history at IBM, for the employee to accept the benefits of voluntary separation rather than risk being laid off. Mr. K. presented no testimony as to the specifics regarding in what respect his performance became unsatisfactory, what caused the decline, why it could not be corrected, and whether, if corrected, the prior decline would have irrevocably placed him among those selected for dismissal in IBM’s well-publicized downsizing. There is a statutory presumption, Family Court Act § 437, that the person chargeable with support has sufficient means to pay. The burden of proof was on Mr. K. to demonstrate to the court that he could not have continued with IBM and maintained his former income level.
For the first time on the objections, Mr. K. raised the issue that he was an alcoholic and had been in a 30-day in-patient treatment program from May 20, 1992 through June 19, 1992. He submitted a letter from the treatment program counselor with his objections as evidence of this condition and asks for reconsideration on this basis. Ms. B.’s attorney in his rebuttal to the objections states that the court should not re-open the case on this basis. This is not newly considered evidence which could not have been produced on Mr. K.’s behalf at the time of the October fact finding. He knew he had attended the rehab and he knew the cause of his poor job performance at the time of the hearing, but made a tactical decision, as he admits in his objections, to "maintain my anonymity”. Using that tactical decision, he did not persuade the Hearing Examiner that his child support should be reduced. This court cannot speculate on whether the Hearing Examiner would have decided differently if Mr. K. had chosen to present his unexpurgated history at the hearing. Litigants cannot, no matter whether the courts may empathize with their reasoning, deliberately choose one trial tactic and get a second chance when the first *820 does not attain their desired result. Inquiry then becomes whether it was reasonable for Mr. K., on the record presented initially to the Hearing Examiner, to take the ITO benefit. His performance rating, although satisfactory, had been declining. He had been singled out by his manager and warned that his performance would have to improve in order to keep his satisfactory rating at his next review. Mr. K. had been given a special project but had not completed it in a satisfactory manner and it had been given to a co-worker to complete. IBM’s posture at the time was to use the carrot of an ITO program to persuade as many employees as possible to leave and thereby avoid the stick of layoffs. Mr. K.’s individual performance was sliding downhill and he appeared vulnerable to being laid off if IBM ever exercised that option to excise employees. Given those factors, even without knowing the cause of the decline, the court finds his decision to leave IBM was reasonable. This is what distinguishes this case from other voluntary disablement cases. In those cases, the higher-paying job would have continued if the support payor had not left. In this case, there was a substantial likelihood that Mr. K.’s job would not continue or that he would not continue in it. By taking advantage of the ITO, Mr. K. secured the possibility of having his salary continue longer than his job was likely to survive. This court will take judicial notice that IBM did subsequently lay off people for the first time in its history in March 1993.
The court also has taken into consideration the fact that Mr. K. promptly obtained a new job, albeit at a lower salary than that paid by IBM. It appears to this court that Mr. K. made a reasoned decision in leaving IBM which was arguably in the financial interest of all of his dependents.
Consideration then turns to when and how to modify Mr. K.’s support order. He received a lump-sum buyout from IBM on July 31, 1992, his last day of work, which was the equivalent of 26 weeks salary plus 2 Vi weeks accumulated vacation, and effectively provided him with the same funds he would have earned during the period from August 1, 1992 through February 15, 1993.
Mr. K. testified that his gross salary at the time he left IBM was $815 per week. Deducting for FICA produces an adjusted income of $752.65. Taking the Child Support Standards Act (CSSA) (Family Ct Act § 413) 17% allocation for support of one child, this would have resulted in a weekly support order of $128. This is not a material variation from the $131 *821 previously ordered in the November 14, 1991 order. This court finds that, because Mr. K. received a lump-sum payment for 28 lá weeks salary, the prior order (i.e., $131 per week) should be in effect for the period covered by the lump-sum payment, which is through February 15, 1993. In addition, he is required to pay 17% of his salary from Fitness Unlimited which he received during this same period. At the time he filed his financial affidavit in September 1992, he had obtained the job with Fitness Unlimited but had not yet been paid. The intent of the CSSA is that all sources of income be considered in setting support awards; the lump-sum payment is subject to the CSSA just as much as any other source of income. Because the lump-sum buyout is calculated on the basis of the employee’s weekly wages at the time of termination, it should be treated as advance payment of wages rather than as a onetime windfall from the lottery. Its purpose is to provide a source of living expenses while looking for another job; part of the living expenses is the obligation to pay child support.
There is not enough information in the record for this court, on review, to determine when Mr. K.’s income changed at Fitness Unlimited. The financial affidavit filed with his petition stated he was to receive $140 per week but had not yet been paid; at the fact finding he testified he was making $246 per week. When this change occurred is not clear.
After February 15, 1993, the attributed income from IBM is no longer in effect and should be removed from the support calculations. After February 15, 1993, his income from Fitness Unlimited and/or any other sources of income shall be the basis for calculating child support.
Accordingly, the November 14, 1991 order for child support of $131 per week shall continue up until the time Mr. K. received payment from Fitness Unlimited. From that time until February 15, 1993, the support order shall be $131 per week plus 17% of Mr. K.’s adjusted gross income minus FICA from Fitness Unlimited. After February 15, 1993, the support order shall be 17% of Mr. K.’s adjusted gross income minus FICA from Fitness Unlimited. If Mr. K. has obtained additional or different employment during the period since the October 23, 1992 fact-finding hearing, the child support shall be calculated pursuant to CSSA on this income also.
Therefore, this case is remanded to the Hearing Examiner for a determination as to when Mr. K. was paid what amounts by Fitness Unlimited so that the fluctuations in the support *822 order can be charted. If his work schedule has not yet stabilized, there is now a long enough work history that an average weekly salary can be calculated. If, taking into consideration the support of his second child, the income available to support L. is below the self-support reserve, then testimony will be needed from Mr. K.’s second wife as to her ability to contribute to the support of K., Ill before the Hearing Examiner can decide to lower the support for L. below the statutory 17%. This court notes that Mr. K. has not petitioned to modify on the basis of his need to support an additional child and that the modification petition was brought solely on the grounds of his loss of employment with IBM although K., Ill had been born at the time the petition was filed.